[No. D010257. Fourth Dist., Div. One. Sept. 24, 1990.]

MICHAEL GOOTEE et al., Plaintiffs and Appellants, v.
MARSHALL LIGHTNER et al., Defendants and Respondents.

## COUNSEL

Karen E. Stawiecki for Plaintiffs and Appellants.

Jaret, Caudill & Kuehn, Brandt Caudill and James C. Chaney for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—Appellant Michael Gootee (individually and as guardian ad litem for Janna and Lisa Gootee) appeals from the judgment entered in favor of respondents Marshall Lightner and The Family Alliance (respondents) following an order granting respondents' motion for summary judgment based on the absolute privilege of Civil Code section 47, subdivision 2.[1] Appellant's complaint sought damages from respondents for professional malpractice based on alleged intentional and negligent conduct. The alleged malpractice occurred during the course of psychological testing and evaluation performed in connection with certain judicial proceedings. We agree that appellant's claims are barred by the absolute privilege provided by Civil Code section 47(2), and therefore affirm the judgment.

### 1. *Factual Background*

The undisputed material facts upon which respondents' summary judgment motion was granted are relatively simple. In mid-1985, Irene (appellant's former wife) filed a petition for change of custody, seeking custody of her three minor children who were then residing with appellant. The parties stipulated, through their counsel, to undergo psychological testing and evaluation in the context of the child custody proceeding, and stipulated to retain respondents to perform the evaluation and provide recommendations to the court. Lightner was not retained to provide therapy, but instead was retained by the parties to evaluate the family in connection with the custody matter. After conducting various tests and interviews, Lightner prepared a report, and subsequently testified, recommending Irene have physical custody with liberal visitation rights for appellant.

Custody apparently was awarded to Irene, allegedly based in part upon respondents' recommendations. After subsequent litigation, however, custody apparently was returned to appellant.

---

[1] For convenience, we shall refer to Civil Code section 47, subdivision 2 as Civil Code section 47(2).

Thereafter, appellant sued respondents for professional negligence, alleging Lightner (1) had been negligent in administering and interpreting the tests, and (2) had destroyed certain raw test data (i.e., a tape recording of part of a testing session). Such data, appellant alleges, impeded his ability to have the test results reinterpreted by the expert psychologist he retained to testify at the custody hearing, and also impeded his ability to cross-examine Lightner at the hearing.

Respondents moved for summary judgment, contending the absolute privilege afforded by Civil Code section 47(2) barred appellant's claims against respondents. Appellant opposed the motion by contending respondents owed a duty of care to appellant in conducting the evaluation, and that Civil Code section 47(2) could not insulate an expert witness from liability for breach of his duty of care. Appellant's opposition to the motion for summary judgment does not specifically challenge the fundamental facts upon which respondents relied to demonstrate the applicability of the privilege, but instead focuses on alleged negligent and ethical errors by Lightner.

The trial court granted the motion for summary judgment, reasoning that even if respondents' actions negligently or intentionally breached some duty of care owed to appellant, the privilege applied to bar liability for both the testimony provided by respondents and the preparatory activities taken in contemplation of testifying. Following entry of judgment, appellant appealed.

### 2. *Contentions on Appeal*

Appellant argues that respondents owed him a duty of due care, and that there is no authority or public policy reason to apply the privilege accorded by Civil Code section 47(2) to negligent acts committed by experts retained to testify. Respondents argue the privilege does apply under the rationale recently enunciated in *Silberg* v. *Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365], or alternatively, the quasi-judicial privilege should be extended to shield experts such as respondents whose role is functionally that of a referee or court investigator.[2]

---

[2] Because we conclude the testimonial privilege applies, it is unnecessary to reach the alternative argument of quasi-judicial immunity. We note, however, that the court in *Howard* v. *Drapkin* (1990) 222 Cal.App.3d 843 [271 Cal.Rptr. 893] held, on facts indistinguishable from this case, that a psychologist retained by stipulation of the parties to evaluate the family in order to provide recommendations concerning appropriate custody orders was shielded from civil liability for various tort claims (alleging both negligent and intentional misconduct) under the umbrella of both quasi-judicial immunity and Civil Code section 47(2).

### 3. Standard of Review

▪ The purposes and standards for summary judgment are well established. "The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues [citations]." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The trial judge determines whether triable issues exist by examining the affidavits and evidence before him, including any reasonable inferences drawable from the facts before him. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) While " . . . the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed [citations], . . . a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist." (*Chern* v. *Bank of America, supra,* 15 Cal.3d at p. 873.)

▪ Where the operative facts are undisputed, the question of the application of privilege is a matter of law (see, e.g., *Goodley* v. *Sullivant* (1973) 32 Cal.App.3d 619, 625-626 [108 Cal.Rptr. 451]), and summary judgment is proper where the facts show the gravamen of the action is barred by the privilege as a matter of law. (See, e.g., *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 393-394 [182 Cal.Rptr. 438].) We conclude the trial court correctly ruled there were no triable issues of material fact and appellant's claims were barred by the privilege.

### 4. The Testimonial Privilege Bars Tort Claims, Other Than for Malicious Prosecution, Against an Expert Witness Whose Sole Function Was to Evaluate for Purposes of Testifying in Court Proceedings

▪ It is undisputed that respondents' role was a limited one: to evaluate the partisans in the custody matter for purposes of testifying concerning the custody dispute.[3] Because the gravamen of appellant's claim relies on negligent or intentional tortious conduct committed by respondents in connection with the testimonial function, we conclude the absolute privilege bars civil lawsuits (other than for malicious prosecution) seeking to impose liability on respondents for such misfeasance.

---

[3] Because there is no allegation that respondents' obligations encompassed therapy or treatment which was negligently performed, it is unnecessary to address whether such a breach of the ordinary duty of due care (see, e.g., *Bardessono* v. *Michels* (1970) 3 Cal.3d 780 [478 P.2d 480, 45 A.L.R.3d 717]) could be defended on grounds of privilege if the therapist's obligations included both therapy and testimony, and the negligent "therapy" was somehow bound up with the testimonial aspects of his role.

In *Silberg* v. *Anderson, supra,* 50 Cal.3d 205, our Supreme Court extensively analyzed the nature and purpose of the privilege provided by Civil Code section 47(2) in circumstances analogous to this case. In *Silberg,* the parties to a dissolution proceeding stipulated to retain an independent psychologist to evaluate the parties and make recommendations concerning custodial issues. Husband was dissatisfied with the resulting orders, and therefore sued his wife's attorney for failing to disclose a preexisting relationship with the psychologist which purportedly influenced the psychologist to give a biased, inaccurate and defamatory report to the court. Husband pled theories of negligent and intentional tortious misconduct. (*Id.* at pp. 210-211.) Attorney successfully demurred to all of the claims based on the Civil Code section 47(2) privilege, which the Court of Appeal upheld as to all negligence claims but reversed as to all intentional tort claims. (*Ibid.*)

The Supreme Court thereafter held the privilege applied to *all* of the claims, including claims based on *intentionally* tortious acts. The court noted the privilege was designed to promote numerous policies: to ensure free access to the courts by eliminating the fear of harassment from derivative tort actions; to promote complete and truthful testimony by freeing witnesses from the intimidation caused by fear of costly lawsuits; and to encourage zealous advocacy by freeing lawyers from the concern of derivative lawsuits. (50 Cal 3d at pp. 213-214.) A final policy noted by the court was to avoid unending litigation and give finality to judgments: "[The immunity] places upon the litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.] The instant case is an example in point. During the dissolution proceedings, the husband had every opportunity to challenge the validity of [the] psychological evaluation and recommendations. He could have engaged another psychologist, attempted to impeach the credibility of [the psychologist] by showing bias, or attacked the evaluation and recommendations in other ways using standard litigation techniques. Having failed to do so during the dissolution proceedings, however, husband now seeks to sue his former wife's attorney for money damages allegedly caused by the use of the assertedly biased and inaccurate report after finality of the dissolution decree. [¶] For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded . . . would impermissibly burden, if not inundate, our justice system. [Citations.]" (*Id.* at p. 214.)

The *Silberg* court, after recognizing the important policies promoted by the privilege, then applied the test for applicability of the privilege and

found the attorney's conduct (i.e., her representation that the psychologist was independent and neutral) was privileged. The conduct was that of a participant in the proceedings; it occurred—although outside the court-room—during the course of and was reasonably related to the dissolution proceeding; and it was connected with and logically related to the purpose of the proceeding. (*Id*. at pp. 219-220.) Therefore, regardless of the theory of pleading, the court concluded that all tort claims premised on the same offending but privileged conduct were barred, even though intentionally tortious conduct was involved.

Similar policy considerations compel application of the privilege here. Freedom of access to the courts and encouragement of witnesses to testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose disagreement with an expert's opinions perforce convinces them the expert must have been negligent in forming such opinions. Moreover, finality of litigation is preserved by applying the privilege. Appellant had and exercised his opportunity to challenge Lightner's methods and conclusions, and, having lost the original contest, should not now be permitted to institute new litigation over those same conclusions.

Appellant, however, claims the privilege is inapplicable because a psychologist owes a duty of care (i.e., carefully to evaluate the family) which was breached in this case. ■■ ■■ ■■ ■■ He further contends the destruction of evidence constituted an independent tort (i.e., spoliation of evidence) for which respondents can be held liable.[4] Implicit in both arguments, however, is the premise that such conduct is outside the protective ambit of the privilege because it occurred independently from the testimonial aspects of respondents' undertaking. However, appellant cites no pertinent authority for the proposition that "preparatory activities" committed in conjunction with or anticipation of privileged testimony give rise to independent tort claims. Instead, the authorities provide to the contrary.

In *Block* v. *Sacramento Clinical Labs, Inc.*, *supra*, 131 Cal.App.3d 386, for example, an expert negligently performed an autopsy, leading to

---

[4] We note, however, that appellant did not plead a distinct cause of action for the intentional tort of "spoliation of evidence." Instead, appellant rested entirely upon the claim that Lightner owed a duty of due care in evaluating the family, which duty was breached by negligent and careless conduct, including destruction of test data. On summary judgment, triable issues of fact must exist *on the issues raised by the pleadings*, not raised by facts which would support an amendment of the pleadings. (*Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [107 Cal.Rptr. 583].) If the hearing on a summary judgment motion reveals a party's pleading is not adequate, a court should permit him leave to amend, " ' . . . but in the absence of some request for amendment there is no occasion to inquire about possible issues not raised by the pleadings.' " (*Krupp* v. *Mullen* (1953) 120 Cal.App.2d 53, 57 [260 P.2d 629].) Since intentional spoliation was not pled, nor was leave sought to plead such a claim, the issue "stood as waived." (*Ibid*.)

criminal proceedings which injured the plaintiff. The court held section 47(2) protected the expert from plaintiff's subsequent lawsuit for professional negligence, reasoning the privilege defeats all tort actions, "however labeled and whatever the theory of liability," where the gravamen of the injury is predicated on the privileged publication of an injurious falsehood. (*Block* v. *Sacramento, supra*, at pp. 390-391, fn. omitted.) The plaintiff attempted to avoid the privilege by arguing that recovery was sought based on defendant's *negligent conduct in reaching his conclusions*, rather than on the testimony itself. The court rejected this argument, stating that "[o]n any cognizable theory of duty, the negligent calculation formed the basis of [defendant's] communication and was privileged [citing *Pettitt* v. *Levy*, *infra*]." (*Id*. at p. 393, fn. 10.)

In *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650], the court was specifically asked to decide whether the protective mantle of the privilege extends to conduct and activities which occurred before and outside the judicial or legislative proceeding but which led to and related to the privileged conduct. The *Pettitt* court, in concluding the privilege applies to such preparatory conduct, reasoned: "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial or quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings. [Citation]." (*Id*. at pp. 490-491.)

Thus, *Pettitt* and *Block* teach that the protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony.[5] This

---

[5] Indeed, we note *Silberg* also involved allegedly intentional tortious conduct occurring outside of and prior to the judicial proceeding, and was nevertheless protected by the privilege. We further note *Silberg* cited both *Pettitt* and *Block* with approval (see *Silberg* v. *Anderson, supra*, 50 Cal. 3d at p. 212), further strengthening our conviction that preparatory activities are intended to be within the scope of the privilege.

Finally, cases construing an analogous statutory immunity under Penal Code section 11172, subdivision (a), providing for reports of suspected child abuse, have held that immunity protects not only the actual act of reporting, but also immunizes the conduct giving rise to the reporting obligation. (See *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393, 1401 [261 Cal.Rptr. 437] [various negligent and intentional tort claims,

action falls squarely within the rationale of *Pettitt* and *Block*. The offending conduct alleged by appellant occurred during and as part of the preparatory activities which were directed toward and done in contemplation of testifying. Moreover, we can discern no injury other than that which resulted from the testimonial process, and appellant had ample opportunity to attack the "negligently prepared expert opinion" during the prior litigation, rather than seek compensation through the "unending roundelay of litigation" condemned in *Silberg*.

Appellant suggests on appeal, however, the privilege is not a defense to his independent tort claim under *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829] for "spoliation of evidence." While *Smith* and its progeny have created this new tort, whose boundaries may still be in flux, we are unaware of any authority holding that the tort extends to (and survives the privilege protecting) the type of conduct alleged here, i.e., a witness's failure to preserve notes or other work product generated by the witness in preparation for testimony.[6] Instead, we perceive that the policies promoted by the privilege and applied broadly by the *Silberg* court compel rejection of appellant's contention that, on the conduct presented here, a spoliation claim supersedes the privilege defense. Freedom of access to the courts, encouragement of witnesses to testify truthfully, and finality in litigation will all suffer if an opposing or neutral expert or lay witness must endure civil litigation merely because the witness failed to retain every note or paper, generated in anticipation of testifying, which an

---

based in part on conduct in interviewing and examining, held barred by the "reporting" immunity of Penal Code section 11172, subdivision (a)]; *Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1223 [242 Cal.Rptr. 312].)

[6] We emphasize our conclusion that the privilege applied is limited to the type of conduct alleged here, i.e., a witness's discarding or destruction of the notes or other work product which he generated in the course of preparing to testify. The destroyed notes can hardly be equated with the type of evidence destroyed in Smith. There, plaintiff had been injured by an apparently defective vehicle. The vehicle constituted the pivotal physical evidence around which plaintiff's prospective products liability case would revolve, but it was destroyed before it could be tested for defects. (*Smith* v. *Superior Court, supra*, 151 Cal.App.3d at pp. 494-495.) The present case does not involve the destruction of physical evidence with a significance and existence independent from the expert's report and testimony.

Furthermore, the "notes" cannot be deemed so "crucial" that their absence deprived appellant of his right to litigate his claims. First, the expert's conclusions were based primarily on his interviews with the participants and test results from the "MMPI." He placed only subsidiary reliance on the remaining tests, only one of which was the test involving the destroyed "notes." Indeed, the test which appellant now claims to be critical was precisely one of the "projective tests" of which appellant's own expert declared: "It has been well established, through various research studies, that these tests have no validity whatsoever." Second, appellant had ample opportunity to attack the viability of the expert's report, by cross-examination, objection to admissibility of the expert's testimony (an objection made and then expressly withdrawn by appellant) and/or by use of counter experts. These are the routes, *Silberg* admonishes, by which injurious testimony should be countered, not by later tort actions. The facts of this case present no occasion for departing from the *Silberg* analysis.

unhappy litigant surmises would have benefited his cross-examination of the witness.

Accordingly, we conclude the privilege applies to bar appellant's tort claims against respondents. (Accord, see *Howard* v. *Drapkin, supra,* 222 Cal.App.3d 843.)

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Todd, J., concurred.