[No. B228191. Second Dist., Div. Four. Jan. 25, 2012.]

CANG WANG et al., Plaintiffs and Appellants, v.
CHRISTIANNE N. HECK et al., Defendants and Respondents.

## COUNSEL

James L. Pocrass Law Corporation, James L. Pocrass and Keith A. Lovendosky for Plaintiffs and Appellants.

Fonda & Fraser, Stephen C. Fraser, Alexander M. Watson; Horvitz & Levy, S. Thomas Todd and Wesley T. Shih for Defendants and Respondents.

## OPINION

**WILLHITE, J.**—Appellants Cang Wang and Xiaofen Wang were critically injured when they were struck by a car being driven by Amr Sarieh, who suffered an epileptic seizure and lost consciousness. Appellants filed a complaint against Sarieh's neurologist, Christianne N. Heck, M.D. (Heck), and Heck's employer, the University of Southern California (USC) (collectively, respondents).[1] The trial court granted summary judgment in favor of respondents on the basis that Heck's communication to the Department of Motor Vehicles (DMV) that Sarieh's epilepsy did not affect his ability to drive safely was privileged pursuant to Civil Code section 47, subdivision (b).[2] We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Sarieh was born in 1971 and has had seizures since the age of 13. The seizures occurred every one or two weeks and caused Sarieh to black out for about three minutes. In 2001, a neurologist at USC examined Sarieh and noted that he was experiencing about one seizure per week or month.

Sarieh's driver's license was suspended for three years in 2001 or 2002 when he suffered a seizure and hit a lamppost. His license was suspended again when he had another seizure-related accident in 2007, but his license was reinstated in October 2008 after Heck wrote a favorable report to the DMV, which we discuss more fully below.

---

[1] Appellants' complaint named other defendants who are not parties to this appeal.

[2] For ease of reference, we will refer to the statute as section 47(b).

Heck began treating Sarieh in 2003, when Sarieh enrolled in a research study regarding the use of a procedure called Gamma Knife radiosurgery to treat epileptic seizures. Heck was the principal investigator of the study at USC, so she took over Sarieh's care from a colleague so that Sarieh could participate in the Gamma Knife radiosurgery trial.

Sarieh underwent the Gamma Knife radiosurgery at USC in June 2003. He was randomly placed in a group that received low dose radiosurgery, a procedure that ultimately was set aside because it was less effective than the high dose radiosurgery. Heck thought that Sarieh did not improve much after undergoing the surgery and that he would benefit from a standard type of epilepsy surgery, but Sarieh did not want to undergo the standard surgery. She also knew that he suffered seizures when he did not take his medication.

On November 5, 2007, Sarieh told Heck that he had had a seizure resulting in a trip to the emergency room on October 19, 2007, and that he was averaging about one seizure per month. Heck again discussed epilepsy surgery with Sarieh, but he expressed fear of undergoing the surgery. Heck "made it clear he is not to drive" because he posed a risk of injury to himself and others, and she noted that she had reported Sarieh to the State Department of Public Health.

In a letter dated January 16, 2008, Dr. Charles Liu told Heck that he had seen Sarieh in the neurosurgery clinic. Liu wrote that, although Sarieh's condition had improved, he continued to have persistent seizures after the Gamma Knife radiosurgery, about one every other month. Liu stated that Sarieh was very anxious to drive again, as Heck and Liu had discussed, and that Liu told Sarieh he should not drive if he continued to have seizures. Liu also recommended surgery to Sarieh.

On January 17, 2008, Sarieh told Heck that his epilepsy had improved since the surgery, but he continued to have "approximately one seizure every couple of months." He asked Heck to complete a driver medical evaluation form for the DMV so that he would be able to drive, but Heck advised him not to drive. Heck noted that she gave Sarieh "strict orders to refrain from driving" because he admitted to driving illegally.

In April 2008, Sarieh told Heck that he had had two seizures in the previous year, the most recent one in November 2007. He again asked Heck for the DMV evaluation form, on the basis of which the DMV could have lifted the suspension of his privilege to drive. Although Sarieh reported that he had been seizure free for a few months, which Heck thought rendered him safe to drive, Heck did not feel comfortable giving him the form because she

was concerned about his compliance with taking his medication. She therefore recommended that he be seizure free for another three months before she would complete the DMV form. She also again recommended that he consider epilepsy surgery.

On September 2, 2008, Sarieh again asked Heck to complete the DMV evaluation form so that he could have his license reinstated, and Heck did so. Sarieh told her that he had been seizure free since November 2007, which he attributed to his improved compliance with his medication requirements. Sarieh agreed to remain compliant with his medication requirements in order to be allowed to drive again. In the form, Heck reported that Sarieh suffered from epileptic seizures, had epilepsy surgery, continued to take medications, and last had a seizure in November 2007. She reported Sarieh's prognosis as good and his condition as stable and opined that his medical condition did not affect safe driving, so long as he took the prescribed medication.

On October 22, 2008, the DMV interviewed Sarieh to determine whether to reinstate his license, which had been suspended on November 24, 2007. The DMV hearing officer relied on the evaluation form completed by Heck and noted that Heck had indicated that "everything is good" and had cleared Sarieh to drive. Sarieh told the officer that he was not having any complications from seizures. The officer decided to lift the suspension of Sarieh's license, and this was done.

On November 15, 2008, around 10:15 a.m., Sarieh was driving to a pharmacy to pick up medication for his stomach. He had a seizure, lost consciousness, and lost control of his car, hitting appellants. Appellants suffered serious injuries, "including bilateral traumatic amputation of Mr. Wang's legs, and a compound ankle fracture and traumatic brain injury to Mrs. Wang." Sarieh had not taken his seizure medication the night before the accident.

Appellants filed a complaint against Sarieh, respondents, and the DMV, for negligence, medical negligence, and government tort liability.

Respondents filed a motion for summary judgment. In support, respondents filed a declaration by Heck in which she stated that when she completed the DMV evaluation form, she believed Sarieh had not had a seizure since November 2007, and she relied on his statement that his seizures were under control and that he was taking the prescribed medication. Respondents also filed an expert declaration by Dr. Robert Fisher, who opined that Heck's recommendation that Sarieh could drive was appropriate, based on Sarieh's statement that he had been free of seizures for 10 months.

The operative pleading is appellants' second amended complaint (the complaint), filed in May 2010, alleging medical negligence by respondents.[3] The complaint alleges that on September 2, 2008, Heck "negligently evaluated [Sarieh] and negligently concluded that he did not have any medical conditions that affect safe driving. The [DMV] relied on that medical evaluation in reinstating [Sarieh's] driver's license." The complaint further alleges that, prior to September 2, 2008, Heck "so negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing, treating, operating and caring for [Sarieh] that [Sarieh] was allowed to operate a motor vehicle and collide with [appellants] which caused [appellants] to suffer the injuries and damages hereinafter alleged. Specifically, [respondents] negligently evaluated [Sarieh] and negligently deemed him fit to operate a vehicle safely."

In opposition to the summary judgment motion, appellants filed an expert declaration by Dr. Ronald Fisk, a neurologist with expertise in epilepsy. Fisk reviewed all of Sarieh's medical, pharmacy, and dental records, as well as his DMV file, the depositions of Sarieh and Heck, and the declarations of Heck and Fisher. Fisk concluded that Heck's decision to approve the reinstatement of Sarieh's driving privileges fell below the applicable standard of care. In support of his conclusion, Fisk pointed out that Heck was aware of the following when she completed the DMV form: neuropsychological tests of Sarieh indicated his IQ was between 71 and 76, which is below the average range; Sarieh had a poor record of compliance with his medication requirements, and Heck had not obtained a lab test to monitor his compliance since November 2007, even though Heck had obtained lab reports approximately every four months prior to November 2007; Sarieh was very anxious to resume driving and knew he could do so only if he reported being free of seizures; Sarieh's experimental surgery was not successful, and Sarieh did not want to undergo the standard epilepsy surgery.

The trial court granted respondents' summary judgment motion on the ground that the suit was barred by the litigation privilege found in section 47(b). The court reasoned that the complaint was based on the DMV evaluation form Heck completed in September 2008, which the court found to be a privileged communication pursuant to the statute, and that treatment prior to the September 2008 form was privileged because it was performed in anticipation of the DMV hearing. The court thus found that appellants had presented no triable issue of material fact, granted summary judgment in favor of respondents, and entered judgment in their favor. Appellants filed a timely notice of appeal.

---

[3] Appellants' first and third causes of action, negligence by Sarieh and government tort liability against the DMV, are not pertinent to this appeal.

## DISCUSSION

Appellants contend that the trial court erred in finding that they had presented no triable issue of material fact, relying on the declaration of Fisk that they submitted in opposition to summary judgment. They further contend that the trial court erred in finding their suit barred by the litigation privilege. Appellants argue that Heck's negligent conduct was her failure to warn Sarieh not to drive, which was independent of her completion of the DMV evaluation form, and that this conduct was not a communication within the meaning of section 47(b).

We review the trial court's grant of summary judgment de novo, "viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor. [Citation.]" (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438 [50 Cal.Rptr.3d 71].) "A defendant moving for summary [judgment] meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, 'but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . .' (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1542–1543 [95 Cal.Rptr.3d 492].) " ' "[A]ny doubts as to the propriety of granting the motion" are resolved in the opponent's favor.' [Citation.]" (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 471 [121 Cal.Rptr.3d 427].)

■ "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. . . . 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.] [¶] 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).)

The litigation privilege " 'exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing. [Citation.]' [Citation.]" (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 958 [70 Cal.Rptr.3d 501] (*Gallegos*).) The phrase "judicial or quasi-judicial proceedings" has been "defined broadly to include 'all kinds of truth-seeking proceedings,' including administrative, legislative and other official proceedings. [Citation.]" (*Ibid.*) "The interpretation of section 47, subdivision (b) is a pure question of law which we review independently. [Citations.]" (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1139–1140 [57 Cal.Rptr.2d 284].) "The litigation privilege is broadly applied [citation] and doubts are resolved in favor of the privilege [citation]." (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 500 [60 Cal.Rptr.3d 11] (*Ramalingam*).)

The trial court here reasoned that the September 2, 2008 DMV evaluation form fell within the meaning of section 47(b) because it was prepared "for use in a quasi-judicial setting by a government agency for purposes of evaluation of the driving status of defendant, Amr Sarieh." The court further reasoned that any allegations in the complaint based on Heck's treatment of Sarieh prior to September 2, 2008, were barred because Heck's treatment prior to that date constituted statements preliminary to or in anticipation of the DMV hearing.

We conclude that the litigation privilege applies to Heck's September 2, 2008 communication to the DMV. None of appellants' causes of action can stand without relying on Heck's completion of the DMV medical evaluation form. We therefore conclude that all of appellants' causes of action are barred by the litigation privilege and that appellants accordingly have failed to present a triable issue of material fact.

In *Gootee v. Lightner* (1990) 224 Cal.App.3d 587 [274 Cal.Rptr. 697] (*Gootee*), the appellant sued the respondents for professional negligence after the respondents performed psychological testing on the appellant's family in order to testify in child custody proceedings. The appellant contended that the respondents had been negligent in performing the testing and had destroyed some data. The trial court granted summary judgment in favor of the respondents based on its conclusion that their conduct in performing the testing fell within the litigation privilege of Civil Code former section 47, subdivision 2, now section 47(b)(1).[4] On appeal, the court affirmed, holding that the privilege applied to the respondents' conduct because "the gravamen of appellant's claim relies on negligent or intentional tortious conduct

---

[4] *Gootee* addressed the litigation privilege as it applied to communications made in connection with divorce proceedings. The principles articulated in *Gootee* regarding the litigation privilege apply to the instant case.

committed by respondents in connection with the testimonial function . . . ." (224 Cal.App.3d at p. 591.) The court reasoned that "[f]reedom of access to the courts and encouragement of witnesses to testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose disagreement with an expert's opinions perforce convinces them the expert must have been negligent in forming such opinions." (*Id.* at p. 593.)

Similar to the respondents in *Gootee*, Heck was a professional whose role as to the DMV hearing was limited to evaluating Sarieh's fitness for driving. (See *Gootee, supra*, 224 Cal.App.3d at p. 591 [noting that it was undisputed that the respondents' role was limited to "evaluat[ing] the partisans in the custody matter for purposes of testifying concerning the custody dispute"].) Although Heck did not complete the DMV evaluation form for purposes of testifying in judicial proceedings, the form was used in the DMV hearing in order for the DMV hearing officer to determine whether to reinstate Sarieh's license. Thus, the form was used in an administrative proceeding, which is a " 'truth-seeking proceeding[]' " for purposes of applying the litigation privilege. (*Gallegos, supra*, 158 Cal.App.4th at p. 958.)

There is no question that Heck was a participant authorized by law to complete the DMV evaluation form and that the form was completed in order to achieve the object of the DMV hearing—that is, to determine Sarieh's fitness for driving. (See *Action Apartment, supra*, 41 Cal.4th at p. 1241 [listing the requirements for application of the litigation privilege].) Because Sarieh's license had been suspended, he needed Heck to complete the evaluation form in order for the DMV to determine whether the license should be reinstated. There can be no dispute that the form had " 'some connection or logical relation' " to the DMV hearing. (*Ibid.*) All four requirements of the litigation privilege accordingly are satisfied.

■ Appellants attempt to avoid the application of the litigation privilege by arguing that it was not merely Heck's completion of the DMV medical evaluation form, but her treatment of Sarieh prior to September 2, 2008, and her failure to warn Sarieh not to drive that constituted medical negligence. However, "the protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony." (*Gootee, supra*, 224 Cal.App.3d at p. 594.)

In *Block v. Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386 [182 Cal.Rptr. 438] (*Block*), the defendant toxicologist erroneously calculated and informed the district attorney's office of the amount of baby aspirin found in the plaintiff's deceased baby daughter, leading to murder charges against the plaintiff. After the error was discovered and the charges were dismissed, the

plaintiff sued the toxicologist for professional negligence. The toxicologist asserted the litigation privilege. The plaintiff "attempted to avoid the privilege by arguing that recovery was sought based on defendant's *negligent conduct in reaching his conclusions*, rather than on the testimony itself." (*Gootee, supra*, 224 Cal.App.3d at p. 594.) This argument was rejected because, " '[o]n any cognizable theory of duty, the negligent calculation formed the basis of [defendant's] communication and was privileged [citation].' [Citation.]" (*Ibid.*)

■ Similarly here, appellants argue that their claims are based on Heck's negligent conduct in reaching her conclusion that it was safe for Sarieh to drive, rather than on the conclusion itself. However, it is clear that Heck's conduct prior to completing the September 2, 2008 DMV evaluation form was the basis of her communication in completing the form. Although appellants attempt to characterize their claim as medical negligence by Heck for failing to warn Sarieh not to drive, the basis of their complaint is Heck's statement on the DMV medical evaluation form that Sarieh could drive safely. Because "[t]he offending conduct alleged by appellant[s] occurred during and as part of the preparatory activities which were directed toward and done in contemplation of" determining Sarieh's fitness to drive, this case "falls squarely within the rationale of [*Gootee*] and *Block*." (*Gootee, supra*, 224 Cal.App.3d at p. 595.)

■ Moreover, " '[i]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . [Citations.]' [Citations.] To show that the litigation privilege does not apply, the plaintiff must demonstrate that 'an independent, noncommunicative, wrongful act was the gravamen of the action . . . .' [Citation.]" (*Ramalingam, supra*, 151 Cal.App.4th at p. 503.) Here, the gravamen of the action was Heck's completion of the DMV evaluation form on September 2, 2008. Although the complaint alleges that Heck negligently cared for Sarieh prior to September 2, 2008, the complaint is clear that the allegedly negligent act that caused the injury was allowing Sarieh to drive. Appellants have not demonstrated that there was any wrongful act independent of Heck's completion of the DMV evaluation form. Heck's noncommunicative conduct prior to completing the DMV evaluation form on September 2, 2008, was necessarily related to the form itself. Thus, the litigation privilege extends to her conduct in deciding to complete the form.

"Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 [120 Cal.Rptr.2d 576].) Although "the litigation privilege has its costs, " '[I]t is desirable to create an absolute privilege . . . not because we desire to protect

the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . ." ' [Citation.]" (*Gallegos, supra,* 158 Cal.App.4th at p. 963.)

Because we conclude that all of the conduct relied upon by appellants in the complaint falls within the litigation privilege, we need not address appellants' arguments that they established a triable issue of material fact as to Heck's conduct prior to September 2, 2008. The trial court did not err in granting summary judgment in favor of respondents.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.