Filed 2/27/14  Christiana v. Plotkin CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN THOMAS CHRISTIANA, | B244862 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC115862) |
| v. | |
| GORDON PLOTKIN, | |
| Defendant and Respondent. | |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County.  Bobbi Tillmon, Judge.  Affirmed.

John Thomas Christiana, in pro. per., for Plaintiff and Appellant.

Herzfeld & Rubin, Michael A. Zuk and Daniel H. Abrahamian for Defendant and Respondent.

_____

This civil suit has been brought by a former defendant in a criminal action, John Thomas Christiana, against a psychiatrist, Gordon Plotkin, M.D. Christiana's public defender declared a doubt as to Christiana's competency to stand trial. At the request of the public defender, Dr. Plotkin evaluated Christiana's competency to stand trial and made a written report to the public defender that Christiana would be unable to assist his counsel in the conduct of a defense in a rational manner. The public defender submitted the report to the trial court, which agreed with Dr. Plotkin's conclusion. Later, Dr. Plotkin testified at a telephonic court hearing pursuant to Penal Code section 1370, subdivision (a)(2)(B)(i)(III) as to whether Christiana should be medicated involuntarily while confined to a state hospital.

Christiana sued Dr. Plotkin in this civil action for damages arising from Dr. Plotkin's report and testimony at the hearing. Dr. Plotkin filed an anti-SLAPP motion. The trial court granted the anti-SLAPP motion and awarded Dr. Plotkin his attorney fees. In consolidated appeals, Christiana now challenges the granting of the anti-SLAPP motion and the award of attorney fees.[1]

We hold that the trial court properly granted the anti-SLAPP motion because Dr. Plotkin's report and testimony were protected under the anti-SLAPP law, as having been provided in a judicial proceeding and Christiana did not establish a likelihood of prevailing on the merits. Christiana could not do so, as Dr. Plotkin's report and testimony were privileged under Civil Code section 47, subdivision (b)(1). We also conclude that the trial court did not err in its award of attorney fees. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Christiana was a defendant in a criminal action. His public defender declared a doubt about his competency to stand trial and asked the court to authorize funds so that her chosen psychiatrist, Dr. Plotkin, could conduct a psychiatric evaluation and prepare a report as to Christiana's competency pursuant to Penal Code sections 1367 et seq. The court did so. Dr. Plotkin met with Christiana and "relayed to Mr. Christiana that the

---

[1] On May 1, 2013, B246753 and B244862 were consolidated for purposes of one brief, oral argument, and decision to be filed under B244862.

purpose of the evaluation was to determine his competency to stand trial and that the purpose of the evaluation was <u>not</u> for [Dr. Plotkin] to provide any type of medical and/or psychiatric care to him." Dr. Plotkin interviewed and evaluated Christiana and made a written report to the public defender.

The report stated that Christiana would be unable to assist his counsel in the conduct of a defense in a rational manner. In particular: "[I]t is his ability to assist counsel in conducting his defense in a rational manner which is clearly impaired. When one is suffering from paranoid delusions and has, in fact, had his behaviors controlled by these delusions (and hallucinations), it is entirely possible, if not likely, that he will edit or withhold data to his attorney as a consequence of the symptoms of his mental illness. His delusions incorporate courtroom participants, government agencies, custody/law enforcement individuals, and one cannot fully determine if this extends far beyond this already complicated web. Because of this, I concur with Dr. Dogr[i]s that he is unable to cooperate with counsel as a direct result of the paranoia, hallucinations and delusions. . . . [¶] Therefore, it is my opinion that Mr. Christiana has a major mental disorder and is not competent at this time due to his inability to assist counsel in conducting his defense in a rational manner." The public defender submitted the report to the trial court, which received it and agreed with Dr. Plotkin's conclusion.

Later, Dr. Plotkin testified telephonically at a hearing pursuant to Penal Code section 1370, subdivision (a)(2)(B)(i)(III) as to whether Christiana should be treated involuntarily with psychotropic medications while confined to a state hospital. Christiana's public defender offered the testimony of Dr. Plotkin. He testified, inter alia, that administration of psychotropic medication had a 75 percent likelihood of returning defendant to competence. (*People v. Christiana* (2010) 190 Cal.App.4th 1040, 1048.) The criminal court ordered that Christiana be medicated involuntarily and issued a commitment order fixing a maximum term of confinement of Christiana in the state hospital at three years. Christiana appealed the orders. The Court of Appeal affirmed the order of commitment but reversed the order authorizing involuntary administration of medication because it was not supported by sufficient evidence. (*Id*. at pp. 1052–1053.)

3

Dr. Plotkin declared, "I never had a psychiatrist-patient relationship with Mr. Christiana and my forensic evaluation of Mr. Christiana was strictly for purposes of providing a competency opinion regarding Mr. Christiana's ability to stand trial."

Christiana filed this civil action against Dr. Plotkin. His original form complaint is titled "Malpractice" and alleges general negligence, intentional tort, and fraud causes of action, all arising from Dr. Plotkin's written report to the public defender and testimony at the hearing concerning involuntary medication. Christiana alleges that he was damaged, inter alia, because Dr. Plotkin's actions caused him to be committed to a state mental hospital, which had legal ramifications and caused embarrassment.

After the filing of the anti-SLAPP motion, Christiana attempted to amend his complaint. Although he sought to add a variety of new legal theories, all the causes of action stemmed from Dr. Plotkin's written report and testimony. Christiana does not allege that Dr. Plotkin provided psychiatric or medical treatment to him. The civil trial court did not permit Christiana to amend. However, in his opposition to the anti-SLAPP motion, Cristiana made arguments similar to the allegations contained in the proposed first amended complaint.

The civil trial court granted the anti-SLAPP motion filed by Dr. Plotkin, entered judgment, and subsequently awarded $22,597.50 in attorney fees to Dr. Plotkin.

Christiana filed these consolidated appeals from the order granting the anti-SLAPP motion, the order awarding attorney fees, and the judgment.

Christiana filed a request for judicial notice of his "original Complaint filed with the Court in the above-entitled Case Number SC 115862." We take judicial notice of the complaint and the proposed first amended complaint in the superior court file pursuant to Evidence Code section 452, but not the exhibit attached to the request for judicial notice.

Dr. Plotkin also filed a request for judicial notice of certain court records, of which we take judicial notice pursuant to Evidence Code section 452.

## DISCUSSION

### A. Pertinent anti-SLAPP law

We review the order granting the anti-SLAPP motion de novo. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.)

"'The Legislature enacted the anti-SLAPP statute to protect defendants . . . from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.'" (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1052.)

The statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) The statute is to "be broadly construed to encourage continued participation in free speech and petition activities." (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22; Code Civ. Proc., § 425.16, subd. (a).)

Code of Civil Procedure section 425.16, subdivision (e)(1) states: "As used in [the anti-SLAPP statute,] 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . ." All petitioning activities are, per se, matters of public significance. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121–1122.) Thus, as to written or oral statements to a court, no inquiry as to the public significance of the statement is required.

In ruling on an anti-SLAPP motion, a trial court engages in a two-step process. As that first step, the court decides whether defendant has made a threshold showing that the cause of action arises from protected activity. The moving defendant bears the burden of

5

establishing this prerequisite to anti-SLAPP protection. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

"To determine the applicability of . . . the anti-SLAPP statute, [courts] look to the gravamen of the instant action. . . . [T]he gravamen of an action is the *allegedly wrongful and injury-producing conduct*, not the damage which flows from said conduct." (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 387; *Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 121.)

If the defendant makes the required showing that the plaintiff's cause of action arises from activity protected by the anti-SLAPP statute, the second step requires that the plaintiff establish through admissible evidence a probability of prevailing on the cause of action. (Code Civ. Proc., § 425.16, subd. (b)(1); *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 355.)

"[P]laintiffs' burden in opposing an anti-SLAPP motion [is] to substantiate *each* element of their cause of action . . . ." (*Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1337.) In addition, there is some authority that plaintiff must present evidence that defeats any privilege or other legal defense asserted by the defendant. (*No Doubt v. Activision Publishing, Inc.* (2011) 192 Cal.App.4th 1018, 1029, fn. 4.) Alternatively, defendant may bear that burden. (*Ibid.*) The plaintiff must make his showing through "'competent and admissible evidence.'" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.) Declarations "that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." (*Ibid.*)

Code of Civil Procedure section 425.16, subdivision (c)(1) provides that, with exceptions inapplicable here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her  attorney's fees and costs." Where a party challenges the amount of the award, review is for abuse of discretion. "With respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court. . . . As our high court has repeatedly stated, "'[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court,

6

and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" — meaning that it abused its discretion.'"'" (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777, citations omitted.)  "The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)

**B.     Pertinent law concerning the litigation privilege**

Civil Code section 47, subdivision (b)(2) confers a privilege against civil liability for statements made in judicial proceedings.  The purposes of the privilege, and its intent to protect persons from the threat of liability in connection with their statements in judicial proceedings, were explained in *Silberg v. Anderson* (1990) 50 Cal.3d 205 (*Silberg*):  "The principal purpose of [Civil Code] section 47[, subdivision (b)] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. . . .  [¶]  Section 47[, subdivision (b)] promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings. . . .  A further purpose of the privilege 'is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' . . . Such open communication is a 'fundamental adjunct to the right of access to judicial and quasi-judicial proceedings.' . . .  Since the 'external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice,' . . . courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings . . . ." (*Silberg*, at p. 213, citations omitted.)

"The usual formulation [of the litigation privilege] is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation, and (4) that have some connection or logical relation to the action." (*Silberg*, *supra*, 50 Cal.3d at p. 212.)

7

The litigation privilege repeatedly has been held to immunize mental health professionals from liability for statements they have made about matters connected to the litigation. This includes immunity from claims of professional negligence arising from negligent or fraudulent preparation of reports and performance of other services.

For instance, in *Howard v. Drapkin* (1990) 222 Cal.App.3d 843, a husband and wife stipulated that Dr. Drapkin would provide services as an independent psychologist, evaluate the facts and circumstances, and render nonbinding findings and recommendations in a child custody dispute. The stipulation became a court order. The report apparently was adverse to the wife, who filed suit against the psychologist, claiming the report was negligently prepared, contained false statements and material omissions, and that Dr. Drapkin had an undisclosed conflict of interest. Her causes of action were for professional negligence, intentional and negligent infliction of emotional distress and fraud. (*Id.* at pp. 848–849.) The court observed that the psychologist had been "hired" by the husband and wife. (*Id.* at p. 849.) Her report was to be given to the husband and wife but not the court. (*Ibid.*)

The plaintiff wife argued that the psychologist should be liable to her on a theory of professional negligence. However, the court rejected that argument, applying the litigation privilege to plaintiff's professional negligence claim and stating that the litigation privilege applies to "*all* torts except malicious prosecution" and extends to publications "'made outside the courtroom'" where "'no function of the court or its officers is involved.'" (*Howard v. Drapkin*, *supra*, 222 Cal.App.3d at p. 861.) The court followed the four-part analysis established in *Silberg* and found the litigation privilege applicable. (*Howard*, at pp. 863–865.)

*Gootee v. Lightner* (1990) 224 Cal.App.3d 587 involved similar facts. There, a psychologist conducted psychological testing and evaluation in connection with a child custody dispute. The parties stipulated to his retention, and he prepared a report and testified. The dissatisfied party sued the psychologist for professional negligence based on allegations that the testing had been conducted negligently and that the doctor had prematurely disposed of the raw data underlying the tests. The court held: "Because the

8

gravamen of appellant's claim relies on negligent or intentional tortious conduct committed by respondents in connection with the testimonial function, we conclude the absolute privilege bars civil lawsuits (other than malicious prosecution) seeking to impose liability on respondents for such misfeasance." (*Id.* at p. 591.)

The appellant in *Gootee* had argued that the privilege was "inapplicable because a psychologist owes a duty of care (i.e., carefully to evaluate the family) which was breached in this case." (*Gootee v. Lightner*, *supra*, 224 Cal.App.3d at p. 593.) The court rejected that argument, stating, "Implicit in [that argument], however, is the premise that such conduct is outside the protective ambit of the privilege because it occurred independently from the testimonial aspects of respondents' undertaking. However, appellant cites no pertinent authority for the proposition that 'preparatory activities' committed in conjunction with or anticipation of privileged testimony give rise to independent tort claims. Instead, the authorities provide to the contrary." (*Ibid.*) The court went on to analyze case law that makes clear that "the protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony . . . . The offending conduct alleged by appellant occurred during and as part of the preparatory activities which were directed toward and done in contemplation of testifying. Moreover, we can discern no injury other than that which resulted from the testimonial process and appellant had ample opportunity to attack the 'negligently prepared expert opinion' during the prior litigation, rather than seek compensation through the 'unending roundelay of litigation' condemned in *Silberg.*" (*Gootee v. Lightner*, *supra*, 224 Cal.App.3d at pp. 594–595; see *Silberg*, *supra*, 50 Cal.3d at p. 212; *Laborde v. Aronson* (2001) 92 Cal.App.4th 459; *Block v. Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 390–393; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 490–491.)

## C.     Pertinent law concerning testimony as to competency and medication

Where a question has been raised as to the mental competency of a defendant in a criminal proceeding, including his ability to assist counsel in the conduct of his defense, Penal Code section 1369 allows the trial court to appoint an expert selected by the

defendant. "[T]he important function of [Penal Code] section 1367 et seq. [is] to safeguard an incompetent defendant against an unfair trial, despite his own belief in his competence." (*Shephard v. Superior Court* (1986) 180 Cal.App.3d 23, 32.)

Where the issue arises as to whether a public institution may administer medications involuntarily to a person confined therein, the United States Constitution requires that a hearing be held. (See *Sell v. United States* (2003) 539 U.S. 166 [123 S.Ct. 2174, 156 L.Ed.2d 197].)

## D. The trial court was correct in granting Dr. Plotkin's anti-SLAPP motion

### 1. Dr. Plotkin satisfied the first prong of the anti-SLAPP statute by establishing Christiana's causes of action arise from protected activity.

There is no dispute that the gravamen of Christiana's causes of action in the original and proposed first amended complaints are that Dr. Plotkin prepared a report and testified and that the criminal court relied upon his report and testimony, causing Christiana damage. However, Cristiana argues that Dr. Plotkin's report and testimony are not the types of communications that are protected by the anti-SLAPP statute because they cannot be characterized as being "in furtherance of a right of free speech" under the United States or California Constitution and because they "do not concern a public issue."

Christiana's argument is belied by the very words of Code of Civil Procedure section 425.16, subdivision (e), which states: "As used in [the anti-SLAPP statute,] 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' *includes*: (1) *any* written or oral statement or writing made before a . . . judicial proceeding . . . ." (Italics added.) This means that, if the communication is made in connection with a judicial proceeding, it is treated automatically as an act in furtherance of free speech and presumed to address a public issue. (E.g., *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at pp. 1121–1122.) Thus, as to written or oral statements made to a court, no inquiry as to the free speech character or public significance of the statement is required. They are presumed.

10

Dr. Plotkin has satisfied the first prong of the anti-SLAPP analysis by showing that the gravamen of the cause of action arises from his communications to the court in a judicial proceeding.

**2.  Christiana failed to bear his burden of establishing a probability of prevailing because Dr. Plotkin's written report and oral testimony were privileged under the litigation privilege of Civil Code section 47, subdivision (b).**

The burden shifted to Christiana to show a probability of prevailing on the merits. (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.)  Christiana has not established any probability of prevailing on his causes of action, however denominated, because all of Christiana's causes of action have as their gravamen the preparation of the report presented to the court and the provision of testimony, which are privileged under the litigation privilege of Civil Code section 47, subdivision (b).

Dr. Plotkin is just the sort of witness the litigation privilege is designed to protect. Without psychiatrists like Dr. Plotkin, who are willing to serve as experts in determining the competency of criminal defendants to stand trial, our courts would be unable to fulfill their crucial, constitutionally mandated duty to protect incompetent criminal defendants from going to trial during a period when they are unable to assist counsel due to mental illness.  (See *Silberg*, *supra*, 50 Cal.3d at p. 213.)

All of Christiana's claims arise from and have as their gravamen Dr. Plotkin's preparation of the written report presented to the court and his oral testimony.  Thus, they all arise from communications made in judicial proceedings.  This is so no matter what legal theory Christiana has utilized in naming his causes of action (e.g., fraud, professional negligence, intentional tort, violation of civil rights, defamation, etc.).  The privilege extends to the actions taken in preparation for the report and testimony as well as the report and testimony themselves. (*Gootee v. Lightner*, *supra*, 224 Cal.App.3d at p. 593.)  Thus, the litigation privilege immunizes Dr. Plotkin as to all such causes of action no matter what they are called so long as the prerequisites of the litigation privilege are satisfied.

The usual four-part test for application of the litigation privilege discussed in *Silberg* is met easily here. (*Silberg*, *supra*, 50 Cal.3d at p. 212.) First, the communications were made in judicial proceedings. The public defender's request that the court appoint Dr. Plotkin to prepare a report occurred in the course of the criminal proceeding and the report itself was presented to the court. In addition, Dr. Plotkin's testimony about the administration of psychotropic medication occurred during a judicial proceeding.

Second, Dr. Plotkin's statements were made by "a participant" in the proceeding, in this case, an expert witness retained by the defense pursuant to an order of the court and in accordance with the authorization of Penal Code section 1367 et seq.

As to the third requirement that the communication be "in furtherance of the objects of the litigation," the requirement is "in essence, simply part of the requirement that the communication be connected with, or have some logical relation to the action." (*Silberg*, *supra*, 50 Cal.3d at pp. 219–220.) As noted, Dr. Plotkin's report and testimony were received in evidence by the trial judge and were needed by the trial judge to determine whether Christiana was competent to assist his counsel at trial and whether he should be given psychotropic medications.

Fourth, the report and testimony were "reasonably related" to the action because they were admitted in evidence and were needed by the trial court to fulfill its duty to determine through the use of expert opinion whether Christiana was competent to assist his counsel at trial and whether Christiana should be treated with psychotropic medication involuntarily.

All four prongs of the test are satisfied.

Nor can Christiana prevail on his theory that actions against a psychologist for professional negligence in preparing reports or testifying are exempt from the privilege. The authorities are squarely against this argument where, as here, the gravamen of the plaintiff's claim is the preparation and presentation of a report or the provision of testimony. (*Gootee v. Lightner*, *supra*, 224 Cal.App.3d 587; *Howard v. Drapkin*, *supra*, 222 Cal.App.3d 843; *Laborde v. Aronson*, *supra*, 92 Cal.App.4th 459; see *Block v.*

12

*Sacramento Clinical Labs, Inc.*, *supra*, 131 Cal.App.3d at pp. 390–393; *Pettitt v. Levy*, *supra*, 28 Cal.App.3d at pp. 490–491.)

Christiana cannot prevail on any of his causes of action because all are barred by the litigation privilege.

### 3. The parties' other arguments as to the anti-SLAPP motion.

Dr. Plotkin argues that he has judicial or quasi-judicial immunity for his report and testimony. We need not reach that issue because the foregoing is dispositive.

Christiana argues he should have been given leave to amend his complaint after the anti-SLAPP motion was filed, whereas Dr. Plotkin argues he had no right to amend at that point. We need not address the issue because we have taken judicial notice of Christiana's proposed first amended complaint and attachments and his arguments concerning it and have concluded that an amendment would not have assisted Christiana.

Christiana argues his claim against Dr. Plotkin is for malicious prosecution and Dr. Plotkin therefore is not immunized by the litigation privilege. However, Christiana has not demonstrated that he can establish the elements of malicious prosecution, including prosecution of anything by Dr. Plotkin, lack of probable cause or malice. Nor did Christiana establish a favorable termination as to the commitment order.

Christiana objects to the manner in which the anti-SLAPP motion was argued in the trial court. Since our review is de novo, Christiana is not prejudiced by any irregularity that may or may not have occurred. Christiana argues that this court should give him special consideration because he is a pro se litigant. However, doing so would not change the legally mandated result here.

### E. There is no showing that the trial court abused its discretion in the award of attorney fees

Dr. Plotkin was entitled to recover attorney fees on his successful anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1). However, Christiana challenges the award of fees as excessive. We review the amount of an award of attorney fees for abuse of discretion. (*Children's Hospital & Medical Center v. Bontá*, *supra*, 97 Cal.App.4th at p. 777.)

13

The trial court was in a far better position than this court to determine whether any amounts claimed were excessive or duplicative. Christiana claims the fees attributed to Dr. Plotkin's motion to reset a hearing date were unnecessary and the fees were excessive generally because the matter was not a complicated one. However, nothing in the record convinces us that the trial court was wrong or abused its discretion in calculating the amount of the award.

Similarly, we reject Christiana's argument that the trial court abused its discretion in awarding fees based on attorney declarations rather than submission of actual billing records. The trial court was permitted by law to rely on attorney declarations unaccompanied by detailed billing records. "The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea*, *supra*, 175 Cal.App.4th at p. 1375.)

Christiana's argument that the attorney fees award is really to an insurance company because, as a Beverly Hills psychiatrist, Dr. Plotkin "would have insurance" is unsupported by citation to any legal authority.

Nor can we find any abuse of discretion by the trial court in failing to consider Christiana's late-filed brief on the issue of attorney fees.

## DISPOSITION

The orders and the judgment are affirmed.  Respondent is to recover his costs on appeal.

NOT TO BE PUBLISHED.


                                                          MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.

---

* Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.