Filed 12/4/13  Martel v. Litchfield CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| RICHARD S. MARTEL, | |
| Plaintiff and Respondent, | C068425 |
| v. | (Super. Ct. No. SCV22556) |
| ROBERT L. LITCHFIELD | |
| Defendant and Appellant. | |

In a prior lawsuit, Richard Martel sued his former girlfriend.  Attorney Robert Litchfield represented the girlfriend in that action.

Martel subsequently sued Litchfield based on communications and court documents created during the litigation between Martel and his girlfriend.  Litchfield ultimately filed a first amended cross-complaint against Martel, alleging, among other things, that Martel intentionally inflicted severe emotional distress on Litchfield by

1

making prank phone calls to Litchfield's law office, leaving obscene, threatening and abusive telephone messages and e-mails for Litchfield, and slashing Litchfield's car tire. The trial court sustained Martel's demurrer to Litchfield's first amended cross-complaint without leave to amend.

Litchfield appeals from the dismissal of his cross-complaint.  He contends (1) the litigation privilege did not immunize Martel from tort liability for the conduct alleged in the intentional infliction of emotional distress cause of action of the first amended cross-complaint; (2) the first amended cross-complaint alleged sufficient facts to state a cause of action for intentional infliction of emotional distress; (3) the trial court abused its discretion because its demurrer order contradicted its prior order denying Martel's motion to strike the prayer for punitive damages in Litchfield's original cross-complaint; (4) the trial court abused its discretion by giving Martel multiple opportunities to amend his complaint against Litchfield while giving Litchfield only one chance to amend his cross-complaint; (5) the trial court erroneously denied Litchfield's motion to disqualify Judge Larry Gaddis; and (6) we should disregard the respondent's brief because it does not comply with rule 8.204 of the California Rules of Court.

We conclude (1) the litigation privilege barred tort liability based on Martel's alleged statements even if such statements were criminal acts, but the litigation privilege did not apply to alleged hang-up telephone calls and the alleged slashing of Litchfield's car tire; (2) however, the first amended cross-complaint did not state a cause of action for intentional infliction of emotional distress because the alleged nonprivileged conduct was not extreme and outrageous; (3) and (4) Litchfield fails to establish that the trial court abused its discretion; (5) Litchfield's challenge to the denial of his motion to disqualify Judge Gaddis is not properly before us; and (6) we will disregard the respondent's brief because it fails to comply with California Rules of Court, rule 8.204.

We will affirm the judgment.

2

BACKGROUND

Martel sued his former girlfriend Danelle Besana. Litchfield represented Besana in that lawsuit.

Martel subsequently sued Litchfield for civil extortion, harassment, defamation, invasion of privacy, intentional infliction of emotional distress, and violation of civil rights (Civ. Code, § 52.1). The lawsuit against Litchfield was based on letters, e-mails, court documents, and other communications by Litchfield in the course of Martel's lawsuit against Besana and Besana's cross-complaint against Martel.

Litchfield filed a cross-complaint against Martel. Following an order granting in part Martel's motion to strike portions of the cross-complaint, Litchfield filed a first amended verified cross-complaint against Martel for breach of contract, breach of a third party beneficiary contract, promissory estoppel, interference with contract, interference with business performance, and intentional infliction of emotional distress.

The first amended cross-complaint alleged, in pertinent part, that Litchfield defended Besana in the lawsuit that Martel filed against her. Martel represented himself in that lawsuit. Martel repeatedly attempted to induce Besana to breach her attorney-client agreement with Litchfield and/or to force Litchfield to abandon his representation of Besana. Martel (a) attempted to blackmail Besana, using threats to report her to the Internal Revenue Service, the Town of Truckee Building Department, and the Town of Truckee for alleged income tax violations; (b) repeatedly made prank telephone calls to Litchfield's law office and left obscene, threatening and abusive telephone messages and e-mails for Litchfield; (c) slashed one of the tires of Litchfield's car; and (d) responded to a settlement offer by making a thinly veiled threat of torture. Martel's actions caused Litchfield to suffer severe emotional distress. Martel's actions were malicious, oppressive and fraudulent, entitling Litchfield to an award of punitive damages.

The trial court sustained, without leave to amend, Martel's demurrer to all causes of action in the first amended cross-complaint. There is no dismissal order in the record

3

before us.  But Litchfield states, without contradiction, that the trial court dismissed Litchfield's entire cross-complaint against Martel.

Martel's lawsuit against Litchfield proceeded to trial.  Martel subsequently filed a notice of appeal of the judgment, and Litchfield filed a notice of cross-appeal of the order sustaining Martel's demurrer to the first amended cross-complaint.

Martel dismissed his appeal.  Therefore, the only matter before us is Litchfield's cross-appeal.  We deem Litchfield's cross-appeal to be from the judgment of dismissal following the order sustaining Martel's demurrer to the entire first amended cross-complaint without leave to amend.  (Code Civ. Proc., § 904.1, subd. (a)(1); *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.)

## STANDARD OF REVIEW

" 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' [Citation.] ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . ." [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]  An appellate court must affirm if the trial court's decision to sustain the demurrer was correct on any theory. [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 807-808, fn. omitted.)

4

DISCUSSION

I

Litchfield claims the litigation privilege did not bar his intentional infliction of emotional distress cause of action because the alleged conduct by Martel was illegal.

The litigation privilege, codified in Civil Code section 47, subdivision (b), imposes an absolute limitation on tort liability. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215-216 (*Silberg*); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322.) Courts have broadly applied the privilege to further its purposes, which are "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1063 (*Rusheen*).) The usual formulation for the privilege is that it "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg, supra,* 50 Cal.3d at p. 212.) The third and fourth elements of the formulation relate to whether the communication has some reasonable connection with the judicial or quasi-judicial proceedings. (*Id.* at pp. 219-220.) As long as the communication by a litigant has some reasonable relation to a judicial or quasi-judicial proceeding, it is absolutely immune from tort liability, except for a claim of malicious prosecution. (*Rusheen, supra*, 37 Cal.4th at p. 1057; *Silberg*, *supra*, 50 Cal.3d at p. 212; *Lerette v. Dean Witter Organization, Inc*. (1976) 60 Cal.App.3d 573, 576 [litigation privilege bars cause of action for emotional harm].) The privilege applies even when the communication is made outside the courtroom and no function of the court or its officers is involved. (*Silberg, supra*, 50 Cal.3d at p. 212.)

5

" 'Any doubt about whether the privilege applies is resolved in favor of applying it.' [Citation.] Although 'the litigation privilege has its costs, " '[I]t is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' " [Citation.]' [Citation.]" (*Wang v. Heck* (2012) 203 Cal.App.4th 677, 686-687.) "The salutary policy reasons for an absolute [litigation] privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings." (*Silberg, supra*, 50 Cal.3d at p. 218.) This is because "the evils inherent in permitting derivative tort actions based on communications during the trial of a previous action are . . . far more destructive to the administration of justice than an occasional 'unfair' result." (*Id.* at p. 213.)

The application of the litigation privilege to the undisputed facts pleaded in a complaint is a question of law subject to our independent review. (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1139-1140.)

Litchfield's intentional infliction of emotional distress cause of action was based on four categories of alleged conduct which occurred during litigation: (1) threats to report Besana to government agencies for alleged tax code violations, (2) a threat to torture Litchfield and Besana in response to a settlement offer, (3) prank and obscene telephone calls and abusive e-mails, and (4) the slashing of Litchfield's car tire.

Litchfield alleged that when he represented Besana in Martel's lawsuit against her, Martel tried to cause Besana to breach her attorney-client agreement with Litchfield and/or tried to force Litchfield to abandon his representation of Besana by various means, including threatening to report Besana to government agencies for alleged tax code violations. Litchfield also alleged that in response to a settlement offer from Besana,

6

Martel made a very distasteful statement which Litchfield understood as a threat of torture.[1]

The alleged statements by Martel were privileged because they were communications made in the course of a judicial proceeding by a litigant in that action and were logically connected with the action. (*Silberg, supra,* 50 Cal.3d at p. 212; *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 341 [litigation privilege precluded intentional infliction of emotional distress claim based on debt collection efforts which included harassing telephone calls where the calls were related to an arbitration award].) In particular, Martel's alleged response to a settlement offer was privileged as a statement made during settlement negotiations. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969-972; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 24; *Izzi v. Rellas* (1980) 104 Cal.App.3d 254, 265-267 ["The indisposition of a party or his attorney to conditions for settlement proposed by an adverse party or his attorney is inherently part of the pursuit of the party objectives in the course of litigation."].) Although we do not condone Martel's alleged conduct, the litigation privilege barred liability for an emotional distress claim based on Martel's alleged statements, even if the statements were tortious or may violate the State Bar Rules of Professional Conduct. (*GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 909-910; *Home Ins. Co. v. Zurich Ins. Co., supra,* 96 Cal.App.4th at p. 24; *O'Neil v. Cunningham* (1981) 118 Cal.App.3d 466, 476; see generally Rules Prof. Conduct, rule 5-100(A) ["A member shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."].)

---

[1] Martel allegedly responded to a settlement offer by telling Litchfield that he and Besana "should soak their settlement offer in Drano overnight, and then 'shove [the dirty rags] up [their] asses.' "

7

The privilege also bars the intentional infliction of emotional distress claim based on alleged telephone messages and e-mails. Litchfield alleged that during the time he represented Besana, Martel left obscene, threatening and abusive telephone messages for him and sent him e-mails of a similar nature. Martel's alleged telephone and e-mail messages to Litchfield were communications made in the course of the lawsuit against Besana by a litigant in that action and were logically connected with that action. (*Silberg, supra,* 50 Cal.3d at p. 212; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 31, 38 [litigation privilege bars defamation claim based on voicemail messages from attorney for brother in a probate dispute between brother and sister].) Accordingly, the emotional distress claim predicated on such telephone and e-mail messages was barred.

Litchfield maintains that the litigation privilege did not apply because the first amended cross-complaint alleged criminal conduct. But courts have applied the privilege to civil actions based on criminal acts. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956 (*Jacob B.*); *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 921 [" 'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation. [Citation.]"]; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489; *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 641.) The litigation privilege applies to any category of publication permitted by law (such as testimony provided in a judicial proceeding) even if the specific publication itself (for example, perjurious testimony) was not permitted by law. (*Jacob B., supra,* 40 Cal.4th at pp. 958-959; *Rusheen, supra,* 37 Cal.4th at p. 1058.) The privilege is simply a test of connectedness or logical relationship to litigation. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1489.) As we have explained, Martel's alleged statements were communications that had a logical connection with his first lawsuit against Besana.

Nonetheless, the litigation privilege does not apply to the alleged hang-up telephone calls to Litchfield's law office and the alleged slashing of Litchfield's car tire, because those acts were not communications. The litigation privilege immunizes only communicative acts. (*Rusheen, supra*, 37 Cal.4th at p. 1058.) "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature. [Citations.]" (*Rusheen, supra*, 37 Cal.4th at p. 1058.) "[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Id.* at p. 1065.)

Examining the gravamen of the action in *Kimmel v. Goland* (1990) 51 Cal.3d 202, the California Supreme Court concluded that the litigation privilege did not apply to the unlawful recording of telephone conversations made in anticipation of litigation. (*Id.* at pp. 211-212.) The Supreme Court distinguished the recording of the conversations from the publication or broadcast of the information contained in the recorded conversations. (*Id.* at p. 211.) Similarly, in *Ribas v. Clark* (1985) 38 Cal.3d 355, 364-365, the defendant could not avoid liability for unlawful eavesdropping on a telephone conversation, but was immune from suit for his subsequent testimony regarding the conversation.

Here, the allegations that Martel made hang-up telephone calls and slashed Litchfield's car tire did not allege communications. As such, the litigation privilege did not immunize Martel for those alleged acts. (*Rusheen, supra*, 37 Cal.4th at p. 1058.)

In sum, the litigation privilege covered and immunized from tort liability the alleged threats to report Besana to government agencies, alleged threat to torture Litchfield and Besana, and alleged abusive telephone calls and e-mails, but did not apply to the alleged hang-up telephone calls and alleged slashing of Litchfield's car tire. The

9

conclusion that the litigation privilege did not apply to bar the latter two categories of alleged conduct does not, however, require reversal of the judgment. As we explain in the next section, the allegations of repeated hang-up telephone calls and slashing opposing counsel's car tire did not assert extreme and outrageous conduct.

## II

Litchfield next claims the first amended cross-complaint alleged sufficient facts to state a cause of action for intentional infliction of emotional distress.

A claim for intentional infliction of emotional distress has the following elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe emotional distress suffered by the plaintiff; and (3) actual and proximate causation. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) A defendant's conduct is extreme and outrageous when it is " ' " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.]" (*Ibid.*) " '[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' " do not constitute extreme and outrageous conduct. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496 (*Cochran*), italics omitted.) " '[Instead t]he requirements [for establishing actionable conduct] are rigorous, and difficult to satisfy. . . .' [¶] On the spectrum of offensive conduct, outrageous conduct is that which is the most extremely offensive. Depending on the idiosyncrasies of the plaintiff, offensive conduct which falls along the remainder of the spectrum may be irritating, insulting or even distressing but it is not actionable and must simply be endured without resort to legal redress." (*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1129.)

"There is no bright line standard for judging outrageous conduct and ' ". . . its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical . . . ." [Citation.]' [Citation.] Even

10

so, the appellate courts have affirmed orders which sustained demurrers on the ground that the defendant's alleged conduct was not sufficiently outrageous.  [Citation.]" (*Cochran, supra,* 65 Cal.App.4th at p. 494.)  The court initially determines whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.  (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44.)

In the context of this case, the alleged nonprivileged conduct -- hang-up telephone calls to Litchfield's law office and, on one occasion, slashing Litchfield's car tire -- did not meet the high threshold for outrageous conduct required by the law.  For conduct to be considered sufficiently outrageous it is not enough that the defendant had tortious intent, or criminal intent, or intended to inflict emotional distress, or even that his conduct is characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.  (*Cochran, supra*, 65 Cal.App.4th at p. 496.)  Liability has been found only where the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  (*Ibid*.)

" 'Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. [Citations.]' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946, disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4.)  But no such facts are alleged here.  There is also no allegation that Martel called Litchfield's home or called him at odd hours.  (*Golden v. Dungan* (1971) 20 Cal.App.3d 295, 310 [complaint alleged extreme and outrageous conduct where the plaintiffs averred that defendants caused a process server to pound on the door of the plaintiffs' home at midnight with the express intent of inflicting extreme mental suffering]; 4 Levy et al., Cal. Torts (2013)

11

Intentional Infliction of Emotional Distress, § 44.01[2][c][iii], p. 44-14 [conduct involving a person's home is a factor in finding outrageous conduct].)

*Cochran, supra,* 65 Cal.App.4th 488, involved bitter feuding following the end of a long-term relationship. (*Id.* at pp. 491-492)  Plaintiffs Patricia Ann Cochran and her daughter asserted that defendant Johnnie L. Cochran became enraged when they publicly revealed their relationship with him.  As punishment, he breached his agreement to provide lifetime support, prompting a lawsuit.  For several years and with increasing frequency after the public disclosure of the relationship, the defendant threatened the plaintiffs, including statements such as:  " 'You know how powerful I am' " and " 'you'll be sorry' ";  that he would have them watched and followed wherever they went; that he would sue any lawyer that represented them; and that the plaintiffs would never win a lawsuit against him because he had friends in every court and could control the decisions of any court hearing plaintiffs' case.  The defendant was a well-known attorney and the plaintiffs believed he had the power and ability to cause the plaintiffs harm.  The defendant knew the plaintiffs were peculiarly susceptible to emotional distress.  The defendant, nonetheless, left a telephone message at Patricia's home which the plaintiffs understood as a serious threat.  The message said the defendant would give the daughter " ' "the Value Jet around the world vacation package," ' " referencing the crash of a Value Jet airplane which killed all aboard. (*Id.* at pp. 492, 494-495, 497-499.)

Here, Litchfield does not allege how many hang-up phone calls Martel made and over what period of time, except that Martel allegedly made six or seven hang-up calls during a one- or two-hour period before slashing Litchfield's car tire.  But making hang-up telephone calls to Litchfield's office and slashing Litchfield's car tire on one occasion does not approach the level of outrageousness found inadequate to describe extreme and outrageous conduct in *Cochran, supra,* 65 Cal.App.4th 488. (See also *Conboy v. AT & T Corp*. (2d Cir. 2001) 241 F.3d 242, 247, 258-259 [based on elements substantially similar to those in California, a complaint asserting an intentional infliction of emotional distress

12

cause of action alleging 30 to 50 telephone calls placed to the plaintiff's home at unusual hours in the day by representatives of a creditor in an attempt to collect a credit card debt fails to allege " 'extreme and outrageous conduct' "]; *Oppenheim v. I.C. System, Inc.* (M.D.Fla. 2010) 695 F.Supp.2d 1303, 1306, 1310 [in the context of an invasion of privacy cause of action, placing 35 to 40 collection calls over a three-month period, in some instances up to four or six times per day, was not sufficiently outrageous, even if the conduct was annoying and bothersome]; *Kent v. Harrison* (Fla.Dist.Ct.App. 1985) 467 So.2d 1114, 1115 [in a case affirming a directed verdict judgment on an intentional infliction of emotional distress claim, harassing telephone calls that continued for several months was not so outrageous and extreme in character as to go beyond all possible bounds of decency].)  Even though the alleged conduct was inappropriate and possibly criminal, the demurrer was properly sustained because the alleged nonprivileged conduct was insufficient to state a cause of action for intentional infliction of emotional distress.

III

Litchfield further claims the trial court abused its discretion because its demurrer order contradicted its prior order denying Martel's motion to strike the prayer for punitive damages in Litchfield's original cross-complaint.  According to Litchfield, the trial court's prior order "validated the cause of action for intentional infliction of emotional distress" in the original cross-complaint, whereas the demurrer order found the identical allegations in the first amended cross-complaint failed to state a cause of action. Defendant says the trial court "made a 180-degree change of position with regard to the same cause of action," and this reversal of position was an abuse of discretion.

Litchfield does not show that the trial court acted outside its discretion.  In fact, the record does not even support Litchfield's claim that the trial court changed position on the same cause of action.  Martel moved to strike the prayer for punitive damages in Litchfield's original cross-complaint on the ground that, as a matter of law, punitive damages were not recoverable for an intentional infliction of emotional distress cause of

13

action.  The trial court denied Martel's motion to strike because that prayer was "supported by the allegations of the intentional infliction of emotional distress cause of action."  In light of the notice of motion and the memorandum of points and authorities in support of Martel's motion to strike, the trial court's order concluded that, as a matter of law, a plaintiff may recover punitive damages for intentional infliction of emotional distress.  (Civ. Code, § 3294, subd. (a); *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1390.)  The trial court was not asked to determine, and there is no indication that it decided, whether Litchfield's original cross-complaint stated a cause of action for intentional infliction of emotional distress.  Accordingly, Litchfield's claim of abuse of discretion fails.

IV

Litchfield next argues the trial court abused its discretion in giving Martel four attempts to correct his pleading against Litchfield but giving Litchfield only one chance to amend his cross-complaint against Martel.[2]  Once again, Litchfield has not established any abuse of discretion.

Although it is generally an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment, the plaintiff bears the burden of showing in what manner he or she can amend the complaint and how such amendment will change the legal effect of the complaint. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 110.)  Neither the opposition to the demurrer that Litchfield filed in the trial court nor the briefs Litchfield filed on appeal set forth any proposed amendments.  Litchfield fails to carry his burden.  (*Goodman v. Kennedy, supra,* 18 Cal.3d at p. 349; *Paterno v. State of California, supra,* 74 Cal.App.4th at p. 110.)

---

[2]  Litchfield's assertions are wrong.  The trial court only gave Martel one opportunity to amend his complaint against Litchfield.

14

Litchfield also challenges the denial of his motion to disqualify Judge Larry Gaddis pursuant to section 170.1 of the Code of Civil Procedure.

A writ of mandate is the exclusive means of seeking review of a ruling on the recusal motion. (Code of Civ. Proc., § 170.3, subd. (d); *People v. Panah* (2005) 35 Cal.4th 395, 444.) As Litchfield did not seek review by this court via writ of mandate, his claim is not properly before us.

VI

Litchfield also asks us to disregard the respondent's brief because it fails to comply with California Rules of Court, rule 8.204. We find merit in the request.

The respondent's brief fails to cite any legal authority for the arguments made therein and fails to provide citations to the record, in violation of California Rules of Court, rule 8.204(a)(1). Claims not supported by legal analysis and citation to authority are forfeited. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 ["It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf."].)

Additionally, the respondent's brief refers to matters that are not part of the appellate record. We do not consider matters outside the record which were included in the respondent's and appellant's briefs. (*Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 813, fn. 2.)

Martel requests an order requiring Litchfield to pay him at least $7,500 in sanctions for filing a "frivolous and improper appeal." The request is made in a summary fashion in the conclusion section of the respondent's brief. On the motion of a party, an appellate court may impose sanctions on a party for taking a frivolous appeal or appealing solely to cause delay. (Cal. Rules of Court, rule 8.276(a)(1); Code Civ. Proc., § 907.) But Martel did not file a noticed motion for sanctions or submit a declaration

supporting the amount of monetary sanctions sought.  (Cal. Rules of Court, rules 8.54, 8.276(b)(1); *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919 [denying sanctions request made in respondent's brief]; *Bak v. MCL Financial Group, Inc.* (2009) 170 Cal.App.4th 1118, 1127-1128.)  Even if a request for sanctions could be made in the respondent's brief, the request would fail because Martel did not request sanctions under a separate heading and did not support that point with argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1).)

DISPOSITION

The judgment is affirmed.


                                                          <u>            MAURO            </u>, J.


We concur:


<u>            NICHOLSON            </u>, Acting P. J.


<u>            ROBIE            </u>, J.