Filed 10/26/22; modified and certified for publication 11/22/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY W., | |
|    Plaintiff and Appellant, | G059429 |
|      v. | (Super. Ct. No. 30-2019-01101730) |
| JULIE W., | O P I N I O N |
|    Defendant and Appellant; | |
| RONNIE DEAN ECHAVARRIA SR., | |
|    Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Gregory H. Lewis, Judge. Affirmed in part and reversed in part,

The Law Office of Douglas S. Honig and Douglas S. Honig for Plaintiff and Appellant.

Smith LC, Stephanie P. Alexander and John S. Clifford for Defendant and Appellant.

Ropers Majeski, German Ariel Marcucci and Terry Anastassiou for Defendant and Respondent.

\*        \*        \*

This appeal and cross-appeal involves a couple who were undergoing dissolution proceedings, Timothy W. and Julie W. (Timothy and Julie, respectively). The underlying dispute in the case before us relates to Julie's disclosure of certain facts about Timothy's past (the sensitive information) that Julie revealed to her codefendant and private investigator, Ronnie Dean Echavarria, Sr. (Echavarria), in connection with the dissolution case. Echavarria revealed the sensitive information to at least one other person, which resulted in several other individuals learning the information. Timothy filed a civil case against Julie and Echavarria (defendants), alleging 12 separate causes of action (although many of them were duplicative or not properly pleaded as separate claims). Defendants filed motions pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] The trial court granted the motions as to 10 of the 12 causes of action, all based in tort, and denied the motion as to two contract-based claims. Timothy now appeals, arguing the court erred by granting the motion. Julie cross-appeals, arguing the remaining two causes of action should also have been dismissed.

We conclude that Timothy's claims directly arose from the dissolution case and that all of the claims are barred by the litigation privilege. His contract claims are barred on several additional grounds. Accordingly, we find that the trial court properly granted defendants' anti-SLAPP motion as to the tort claims and incorrectly denied it as to the two breach of contract claims. We therefore affirm the court's order in part and reverse in part.

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

I

FACTS

Timothy and Julie were married in 1995. According to Julie, Timothy had a gambling problem and lost significant amounts of money by participating in illegal sports betting. Sometime after their marriage, based on an alleged promise to keep the disclosure confidential in perpetuity, Timothy disclosed the sensitive information to Julie.[2] Timothy's briefing refers to this promise as a "contract." Later, according to Julie, she believed Timothy disclosed the sensitive information as a way to excuse his gambling losses. In 2009, the FBI visited their home and spoke with Timothy. Timothy told Julie he was questioned about sports betting by a friend of his. Julie did not believe this, and thought they were there asking Timothy about his own gambling, and potentially, an incident of financial wrongdoing related to the sensitive information.

In June 2018, Timothy filed for divorce, and the couple apparently separated. By October, Timothy was romantically seeing a woman named Ashley K. (Ashley). Ashley was previously married to Chris K. (Chris) and had been legally separated from him since April 2018. Ashley and Chris had a two-year-old daughter. Timothy alleged that Julie's neighbors saw Timothy and Ashley at a concert together in October and told Julie about it.

A few days later, Julie hired Echavarria, a former police detective, for private investigation services. According to Julie, she hired Echavarria, in part, to find out why the FBI had visited their home in 2009 with respect to the financial wrongdoing related to the sensitive information. She also believed Timothy was hiding community assets.

_____

[2] Because it is not necessary to decide the case, we do not include the sensitive information in the opinion.

Julie also disclosed the sensitive information to Echavarria and made numerous unflattering statements about Timothy's demeanor and temper, including that he was potentially dangerous to children.

In January 2019, Echavarria disclosed the sensitive information to Chris, who disclosed it to Ashley, and allegedly stated that Timothy was a danger to their daughter. Ashley then disclosed the information to her uncle, who disclosed it to his girlfriend. According to Julie, she did not tell Echavarria to share the sensitive information with Chris, although Echavarria testified later that Julie told him Chris "should know" the information. The sensitive information was also disclosed to Julie's divorce attorney, Angel Camino. In sum, Julie disclosed the sensitive information herself to Echavarria and Camino. Echavarria's disclosure to Chris resulted in three other people—Ashley, her uncle, and the uncle's girlfriend. Therefore, a total of six people learned the sensitive information as the result of Julie's disclosures. There is no indication the information has gone beyond that group.

In July 2019, Timothy filed a request for a domestic violence restraining order against Julie, on the grounds that Julie had "been spreading information about me, including false accusations, to . . . third parties with the hope that it will damage me in some way." Julie's opposition set forth numerous incidences of abuse during the marriage and stated that she was afraid for her life and that Timothy had falsely reported to the police that she was a suicide risk. The opposition also discussed a loud verbal altercation between Timothy and Chris that had taken place during a custody exchange between Ashley and Chris. The request was ultimately resolved through a stipulated order in which Julie agreed not to disclose or discuss the sensitive information with anyone except her attorneys.

In October 2019, while the dissolution case was pending, Timothy filed the instant civil case against defendants. His first amended complaint alleged 12 causes of action: (1) Breach of Oral Contract; (2) Breach of Oral Contract (Specific Performance);

4

(3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Breach of Fiduciary Duty; (5) Breach of Obligation of Confidential Relationship and Communications; (6) Intentional Infliction of Emotional Distress; (7) Negligent Infliction of Emotional Distress; (8) Negligence; (9) Gross Negligence; (10) Invasion of Privacy (Including Public Disclosure of Private Facts); (11) Defamation; and (12) Injunctive Relief (Temporary Restraining Order, Preliminary Injunction, And Permanent Injunction). Echavarria was named in all claims except for breach of oral contract and "breach of obligation of confidential relationship and communications." (Boldfacing & capitalization omitted.)

During the pendency of the case, Timothy filed repeated requests to seal all or part of the record, both ex parte and through noticed motions. Julie opposed. In January 2020, the court denied the motion to seal the entire court file, but granted the motion to seal as to certain specified documents. That order stated: "The court finds that Plaintiff met his burden under CRC rule 2.550(c) to establish the five factors necessary to seal the record." As the matter progressed, the court granted other requests to seal certain documents.

In November 2019, defendants filed the instant anti-SLAPP motions, seeking to dismiss some or all of Timothy's first amended complaint. Timothy opposed, and defendants filed their individual replies. On July 27, 2020, the court granted Julie's motion as to the third through twelfth causes of action, leaving only the two breach of contract claims. As to Echavarria, the court granted his motion in its entirety. The court concluded the fourth through twelfth causes of action, which were based in tort, were barred by the litigation privilege, which also precluded the third cause of action for breach of the implied covenant of good faith and fair dealing. The court's analysis of the breach of contract claims in its written order was limited to finding those claims were not barred by litigation privilege.

5

Timothy filed a petition for a writ of mandate, which was denied. Julie filed a motion for and was granted attorney fees of $88,561.25 as prevailing party on the anti-SLAPP motion. Echavarria was granted $115,060 in attorney fees. Those orders are the subject of a related appeal.

The instant appeal and cross-appeal address the merits of the anti-SLAPP motion.

## II

## DISCUSSION

### A. *Motions to Seal*

Timothy moves to seal both the briefs and the record on appeal and submitted both to this court conditionally under seal with redacted documents available to the public. The court may order that a record be filed under seal only if it finds facts that establish: 1) there exists an overriding interest that overcomes the right of public access to the record; 2) the overriding interest supports sealing the record; 3) a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; 4) the proposed sealing is narrowly tailored; and 5) no less restrictive means exist to achieve the overriding interest. (Cal. Rules of Court, rule 2.550(d); see *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178.) We must weigh the competing interests at hand, which is difficult without describing the sensitive information. We have reviewed those interests, and we find good cause exists to grant the motions to seal.

### B. *Anti-SLAPP Statutory Framework and Standard of Review*

Because the appeal and cross-appeal address the same legal issues for different causes of action, we shall address them together as much as is practical. The anti-SLAPP statute states: "A cause of action against a person arising from any act of

6

that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67-68, fn. 5.) The statute is to "be construed broadly." (§ 425.16, subd. (a).)

Section 425.16, subdivision (e) defines an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Once we determine that the anti-SLAPP statute applies, the burden then shifts to the plaintiff to demonstrate a probability of prevailing. (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417.) If the plaintiff does so, the motion to strike under the anti-SLAPP statute must be denied. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if

7

the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) We review the trial court's decision on an anti-SLAPP motion de novo. (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1466.)

*C. Protected Activity*

The first step of the anti-SLAPP analysis requires us to decide whether the challenged claims arise from defendants' acts in furtherance of their right of free speech or right of petition. (§ 425.16, subd. (e).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.) "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Ibid.*)

Timothy argues that Julie is not entitled to anti-SLAPP protection because her statements were not made in front of a tribunal of any kind. But it has been widely held that conduct concerning litigation that takes place outside of court may be protected under the anti-SLAPP statute. In the anti-SLAPP context, "'[a]ny act' includes communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) This includes conduct ranging from filing an insurance claim as a prerequisite to litigation (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 825), to counseling a tenant in anticipation of litigation (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1109-1115), to soliciting litigation by others (*Rubin v. Green* (1993) 4 Cal.4th 1187), to communications in the course of settlement negotiations (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963-964).

The basis for all of Timothy's claims is that Julie communicated the sensitive information to Echavarria, and Echavarria communicated it to others. Echavarria was hired in furtherance of the ongoing dissolution proceedings to conduct a financial investigation, which included Timothy's gambling debts and alleged financial wrongdoing relating to the sensitive information. Echavarria testified that the purpose of the disclosure to Chris was to share information that could be helpful in both Julie and Chris's divorce proceedings.

Timothy vastly overstates the connection that must exist between the alleged conduct and judicial proceedings, claiming that Julie must "prove that: (1) she understands the legal significance of the [dissolution] issues and (2) the legal causal connection between the [sensitive information] and those issues." The case he cites, *Trilogy Plumbing Inc. v. Navigators Specialty Ins. Co.* (2020) 50 Cal.App.5th 920, which has an entirely different factual context, simply does not support such a stringent test. Timothy further ignores the statutory requirement that anti-SLAPP motions are to be construed broadly. He also claims that statements are only subject to an anti-SLAPP motion if Chris had an "interest" in the divorce, a claim again supported by a quotation from a case in a very different factual context. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.)

In sum, Timothy claims the issues Echavarria was hired to investigate are only "incidental" and irrelevant to his complaint, but this statement misses the boat entirely.[3] According to Julie, the entire reason for her disclosure of the sensitive information to Echavarria was due to the financial investigation she wanted Echavarria to undertake. Because that investigation included a financial misdeed directly related to the sensitive information, disclosing it was necessary for Echavarria to do his job. "We note that section 425.16, subdivision (e)(2), 'has been held to protect statements to persons

---

[3] Timothy also claims that the court did not rule on his various evidentiary objections. The objections that he mentions in his brief are not pertinent to our decision.

9

who are not parties or potential parties to litigation, provided such statements are made "in connection with" pending or anticipated litigation.'" (*Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 136.)

Defendants cite *Contemporary Services Corp. v. Staff Pro Inc*. (2007) 152 Cal.App.4th 1043. In that case, the parties were competitors, and while litigation was pending between them, the defendant sent an e-mail to nine of its own clients, who were not parties to the case, stating that the plaintiff had paid defendant's former employees to make false statements in declarations in order to discredit defendant to its clients. The court held that sending the e-mail fell within the anti-SLAPP statute because it described the parties' contentions and the audience consisted of persons who were witnesses or potential witnesses. (*Id.* at pp. 1053-1055.) Julie's statements to Echavarria, including disclosing the sensitive information, are cut from the same cloth. Echavarria was retained in connection with her pending dissolution proceeding, and he spoke to Chris because Chris's estranged wife was now in a relationship with Timothy and might have information relevant to the dissolution proceedings.

Further, in *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, a rumor began circulating that the city manager of Morgan Hill (the city) was having an affair with the city attorney. A member of the city council retained attorney Bruce Tichinin, who hired a private investigator to conduct surveillance of the city manager. Tichinin was also representing two clients in matters before the city council at that time. (*Id.* at pp. 1055-1056.) In short, the city manager eventually realized he was being followed, and Tichinin, when asked, first denied being responsible for the surveillance before admitting it and apologizing. (*Id.* at pp. 1058-1059.) The city council adopted a resolution condemning Tichinin and demanding his resignation from a city committee. Tichinin subsequently filed an action in state court pursuant to title 42 United States Code section 1983 (section 1983). The city filed an anti-SLAPP motion, which the court granted. (*Id.* at pp. 1055-1056.)

10

The appellate court reversed the trial court's decision to grant the motion. (*Tichinin v. City of Morgan Hill*, *supra*, 177 Cal.App.4th at p. 1056.) The first prong of the anti-SLAPP analysis was easy to satisfy because Tichinin's claims were based on the city council's reports, hearing, and resolution condemning him. (*Id.* at p. 1061.) Because Tichinin's claim was under section 1983, the court also had cause to analyze, in the second prong, whether the act of hiring a private investigator was protected under the rights of free speech and petition. (*Id.* at p. 1064.) The court found that it was protected activity under the *Noerr-Pennington* doctrine. "[T]he investigation of a potential claim is normally and reasonably part of effective litigation, if not an essential part of it." (*Tichinin*, at pp. 1068-1069.) Although procedurally different, the same reasoning applies here – investigation is an essential part of litigation, and therefore, the act of hiring a private investigator in connection with potential or actual litigation falls within the protections of the anti-SLAPP statute.

Timothy's contention that defendants are not entitled to anti-SLAPP protection because of their "unlawful" behavior, citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320-321, is simply wrong. That case does not apply to untoward behavior or even behavior that violates a statute. As it makes clear, it is a narrow exception that only applies to conduct that is criminal as a matter of law. Further, it applies only "where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence." (*Id.* at p. 316.) In *Flatley*, the conclusive evidence was an extortionate letter from the defendant. (*Id.* at pp. 307-309; see *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151.) There is no such conclusive evidence of any crime here, despite Timothy's efforts to fit the instant facts into that very narrow definition.[4]

---

[4] The "crime" points to with regard to Echavarria is a violation of Business and Professions Code section 7561.4, subdivision (a), which gives the relevant state agency the power to revoke a private investigator's license if the licensee "knowingly publish[es] a slander or a libel in the course of business." It is, of course, disputed whether there was any slander whatsoever.

Timothy also argues that both defendants waived their right to the protection of the anti-SLAPP law because of Julie's purported confidentiality agreement and "marital contract" – Julie directly and Echavarria as her agent. He relies completely on his allegation that such an agreement or contract existed to support this tenuous argument. The trial court correctly determined that Timothy had not established waiver by clear and convincing evidence, citing *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31. Timothy claims he "submitted substantial evidence to prove that Julie intentionally relinquished her right to speak" but this "evidence" was completely contradicted by Julie's evidence on the matter and came nowhere close to establishing waiver.

Defendants have satisfied their burden to demonstrate the conduct that is now the subject of Timothy's lawsuit was in connection with a pending judicial proceeding. Accordingly, the anti-SLAPP statute applies.

## D. Prima Facie Case

"If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

### 1. Litigation Privilege on Tort Claims

A plaintiff cannot establish a prima facie case if the litigation privilege precludes a defendant's liability on the claim. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 323-324.) "The litigation privilege, codified at Civil Code section 47, subdivision

(b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

"The litigation privilege is a statutory protection that has been interpreted expansively." (*Dziubla v. Piazza*, *supra*, 59 Cal.App.5th at p. 155.) "'[D]oubts are resolved in favor of the privilege.'" (*Wang v. Heck* (2012) 203 Cal.App.4th 677, 684.) "'In the anti-SLAPP context, the litigation privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."'" (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 785-786.)

The purpose of the litigation privilege "'is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'" (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at pp. 1241-1242.) The privilege also grants "'litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.'" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955-956.) The only recognized exception to the privilege is actions for malicious prosecution. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215-216.)

Here, there is no question that Julie's statements to Echavarria and Echavarria's statements to Chris were in the context of ongoing marital dissolution

proceedings. Such conduct is communicative, which is a necessary element of the litigation privilege. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at pp. 1057-1058.) The statements were made by Julie herself and by Echavarria, who Timothy argues numerous times was her agent. There is no reasonable dispute that these communicative acts form the basis for all of Timothy's claims. Julie was a litigant in the proceedings, and Echavarria, as an investigator, was authorized to conduct an investigation on her behalf.

Further, the statements by Julie to Echavarria were made to achieve the goals of the litigation, specifically, to help Echavarria conduct his financial investigation. Despite Timothy's claims to the contrary, the statements were not incidental. Once again, he attempts to give the narrowest possible interpretation to the law. "'The terms "related to" or "connected with" necessarily require more than a remote relationship or common factual genesis between two otherwise unconnected subjects. To come within the privilege, the fact communicated itself must have some bearing on or connection with the subject matter of the litigation.'" (*Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 149.)

In this case, Echavarria was conducting a financial investigation which included whether Timothy was hiding marital assets. The sensitive information included financial wrongdoing directly related to that information. Echavarria also reached out to Chris, the estranged husband of Timothy's new romantic partner, with the hope that they might share information relevant to both divorce proceedings. Therefore, Echavarria's communications with Chris satisfy the test of having a connection to the subject matter of the litigation. Accordingly, given the breadth of the litigation privilege, we find the trial court correctly decided that the third through twelfth causes of action were barred as to both defendants.

14

## 2. *The Breach of Contract Claims*

First, we dispense with any claim that Echavarria can be held liable for breaching a contract he never entered into. Timothy does not provide any cognizable argument to the contrary, simply asserting that "there was a valid contract." Timothy has not met his burden to establish a breach of contract claim against Echavarria.

Second, the cause of action for "Breach of Oral Contract Specific Performance," against Julie must also fall. "'[S]pecific performance and injunctive relief are equitable remedies and not causes of action for injuries.'" (*Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890, 901.) A remedy must have a cause of action to support it. Accordingly, Timothy cannot prevail on a cause of action for "'specific performance.'" We therefore conclude the trial court erred by not granting the anti-SLAPP motion as to the second cause of action.

Third, we examine the competing arguments about whether the litigation privilege applies to breach of contract claims. Breach of contract claims are not categorically excluded from the privilege. Rather, if it applies turns on whether the privilege furthers the purposes behind it based on the underlying facts.[5] (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492; see *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 709-710; *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1169.)

In the case Timothy relies on, *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, *supra*, 13 Cal.App.5th at pp. 787-788, the plaintiff alleged the defendant breached a deed of trust by failing to follow California law during a nonjudicial foreclosure proceeding. In that context, "[a]pplying the privilege to Crossroads' contract claims would not further the policies underlying the privilege. In fact, it would defeat them." Although the nonjudicial foreclosure proceeding was

---

[5] The California Supreme Court granted review on this issue in *Olson v. Doe* (2022) 12 Cal.5th 669, 687, but ultimately did not reach it.

15

litigation-related conduct, applying the privilege would not serve the purpose of free and open access to the courts – rather, it would defeat those aims by allowing a defendant to violate California foreclosure law with no remedy. (*Id.* at p. 788.)

The case at bar, however, is quite different. The purposes of the litigation privilege are served, not frustrated, by applying the litigation privilege to Timothy's claim for breach of oral contract. A litigant must have the freedom to hire and speak to an investigator during pending litigation without the fear that her words could be the subject of collateral litigation. Accordingly, we find that the litigation privilege applies to the breach of contract claim against Julie.

Finally, even if the litigation privilege was inapplicable, Timothy's breach of contract claim is barred by Family Code section 1620. That section states: "Except as otherwise provided by law, spouses cannot, by a contract with each other, alter their legal relations, except as to property." (Fam. Code, § 1620.) "'Property' means an interest, present or future, legal or equitable, vested or contingent, in real or personal property, including income and earnings." (Fam. Code, § 1610, subd. (b).) A contract purporting to hold one spouse liable for revealing the secret of another would, indeed, "alter their legal relations." It would create a separate agreement that, according to Timothy, would last beyond the marriage itself. Because it does not deal with "property," as defined by Family Code section 1620, the alleged oral agreement is void as a matter of law.

Timothy's arguments as to why Family Code section 1620 should not apply to the purported contract here are without merit. First, he argues it was not raised below or relied upon by the trial court. A legal theory may be raised for the first time on appeal as long as it presents a question of law to be applied to undisputed facts. (*Hoffman–Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15-16.) Timothy claims he was entitled "to file a declaration stating that the . . . confidentiality agreement did not affect the status of the parties nor did the parties intend that the confidentiality agreement affected their marital status," but that would have made no difference, as any such

16

assertions would have been legal conclusions and not facts within his personal knowledge.

The relevant allegations in the complaint, not Timothy's opinions, are what control here. Those allegations were that the parties entered into a binding oral contract under which Julie would forever keep the sensitive information a secret. The consideration for this contract, as the complaint alleged, was to "improve and elevate their relationship." As a matter of law, if Timothy had the right to sue for breach of that alleged contract, it "alter[ed] [the] legal relations" (Fam. Code, § 1620), between Timothy and Julie. A binding contract, by its nature, alters legal relations between the parties who enter into it, and married couples cannot do so under California law except with respect to property.

Timothy next claims that if we give Family Code section 1620 this interpretation, it is unconstitutional as a violation of his inalienable rights. This point is not well-taken. As Julie points out, California law includes restrictions on the freedom to contract, including multiple provisions of the Labor Code (see Lab. Code, §§ 219, 432.6, 1194), as well as Business and Professions Code section 16600, which prohibits contracts that restrain trade or prohibit engaging in a lawful trade or profession. Timothy also offers an offhanded statement that Family Code section 1620 unlawfully discriminates against married people, but offers no authority or argument to support this ill-founded claim, and it is therefore waived. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Given that Family Code section 1620 is a complete bar to the contract alleged in the first cause of action, we find that Timothy has not established the minimal merit required under the second prong of the anti-SLAPP statute. We therefore conclude the trial court erred by not granting the anti-SLAPP motion as to the first cause of action.

Julie also offers a brief argument that the entire case is barred by the primary jurisdiction doctrine. However, we find this argument is not fully developed and

17

is only supported by citations to general principles of law.  Therefore, we deem it waived. (*Paterno v. State of California*, *supra*, 74 Cal.App.4th at p. 106.)


III

DISPOSITION

We affirm the trial court's ruling granting the anti-SLAPP motion as to the third through twelfth causes of action.  We reverse the trial court's ruling denying the anti-SLAPP motion as to the first and second causes of action, and direct the court to enter a new order granting the motion as to all causes of action.

Defendants are entitled to their costs on this appeal.  As prevailing defendants, both are also entitled to recover their attorney fees on appeal as a matter of right.  (§ 425.16, subd. (c)(1); see *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461.)  They may make the appropriate motions for attorney fees on appeal in the trial court.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.

Filed 11/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY W.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JULIE W.,<br><br>    Defendant and Appellant;<br><br>RONNIE DEAN ECHAVARRIA, SR.,<br><br>    Defendant and Respondent. | G059429<br><br>(Super. Ct. No. 30-2019-01101730)<br><br>ORDER MODIFYING OPINION; GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

The opinion filed on October 26, 2022, is modified as follows:

1.  On page four, second full paragraph, second full sentence is deleted and replaced with the following sentence:

Chris then disclosed the information to Ashley's uncle, who disclosed it to his girlfriend.

Defendant and Appellant Julie W., has requested that our opinion, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2). The request is GRANTED.

The opinion is ordered published in the Official Reports.

                                        MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.

2